UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-08-KSF

SAMANTHA MURPHY                                                                                          PLAINTIFF

v.                                           **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                                  DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Samantha Murphy, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income based on disability ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and decided by the proper legal standards.

I.      **OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential evaluation process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

> (1)     If the claimant is currently engaged in substantial gainful activity, she is not disabled.
>
> (2)     If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

1

>   (3)   If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
>   (4)   If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.
>
>   (5)   Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve

conflicts in the evidence or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II. THE ADMINISTRATIVE DECISION

Murphy filed an application on January 11, 2006, alleging an onset date of September 15, 2004, which was denied initially and on reconsideration. (TR 14). A hearing was held February 14, 2007, and, in a written opinion issued April 11, 2007, the ALJ denied Murphy's claim for disability benefits. (TR 11). The ALJ's decision became final when the Appeals Council denied Murphy's request for review on November 5, 2007. (TR 5). Murphy has exhausted her administrative remedies and filed a timely action with this court. The case is now ripe for review under 42 U.S.C. § 405(g).

At the time of the ALJ's decision, Murphy was 22-years-old with a high school education and training as a certified nurses' assistant ("CNA"). She was 19 at the time of the alleged onset of disability. She has past relevant work experience as a CNA, cashier and server. Murphy alleges disability due to bipolar disorder, panic disorder with agoraphobia, personality disorder with dependent personality traits and obesity.

The ALJ began his analysis at Step One by determining that Murphy has not engaged in substantial gainful activity since her alleged onset date. (TR 16). At Step Two, the ALJ found that Murphy suffered from obesity, depressive disorder/bipolar disorder, panic disorder with agoraphobia, and personality disorder with dependent personality traits. (TR 16). Continuing to Step Three, the

ALJ determined that these impairments or combination of these impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments. (TR 17). At Step Four, the ALJ found that Murphy was unable to perform her past relevant work. At the fifth and final step, relying on testimony of the Vocational Expert ("VE"), and taking into consideration Murphy's age, educational background, prior work experience and residual functional capacity ("RFC"), the ALJ found that Murphy was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied her claim for DIB and SSI.

In making his determination that Murphy was not disabled, the ALJ found that Murphy has no exertional limitations but does have non-exertional limitations. (TR 17). She can never climb ladders, ropes or scaffolds and must avoid all exposure to unprotected heights. She is able to relate to co-workers and supervisors either one on one or in small groups, but has a poor ability to deal with the public. She has a poor ability to deal with work stresses and a fair to poor ability to function independently. She is limited to simple, repetitive tasks and has a poor ability to demonstrate reliability and to maintain her personal appearance. (TR 17). In making this determination, the ALJ noted that because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, he must consider the factors set out in 20 CFR 404.152(c) and 416.92(c). After discussing these factors, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (TR 18). In support of this finding, the ALJ cited treatment records from Stoner Creek Centre and Pathways. He also cited an evaluation by consultative

examiner, Andrew B. Jones, Jr., Ph.D. who diagnosed Murphy with adjustment disorder and mixed anxiety and depressed mood; dependent personality traits. Dr. Jones opined that Murphy was capable of comprehending and remembering simple one/two step instructions, was capable of consistently interacting with co-workers, friends, supervisors and the public without incident and that she maintained the functional capacity to adapt or respond to normal work pressures once her psychosocial stressors were abated. (TR 19). The ALJ also cited the state agency experts who found that Murphy had only moderate limitations and was able to understand and complete simple to more complex tasks, relate to co-workers, supervisors and adapt in a normal, non-public setting. (TR 19). Finally, the ALJ cited the medical expert at the hearing, Dixie Moore, Ph.D. Dr. Moore opined that Murphy had severe impairments, including bipolar disorder and/or adjustment disorder with anxiety and depression and dependent personality traits. (TR 20). Dr. Moore found that Murphy had only mild to moderate limitations and that her limitations did not meet or equal a listed impairment. (TR 20).

At the hearing, in response to the hypothetical posed by the ALJ, the VE testified that Murphy could perform work as a janitor/cleaner and/or laborer/packer, jobs which exist in significant numbers in the national economy. (TR 330) (25,000 statewide and 2 million nationwide for janitor/cleaner and 35,000 statewide and 2 million nationwide for laborer/packer). As part of the hypothetical, the ALJ defined "poor ability" as "seriously limited but not precluded." In response to questions but Murphy's counsel, the VE testified that with the "poor" reliability factor, Murphy could obtain employment but agreed that maintaining employment might be limited by Murphy's choice to leave that employment. (TR 335-336).

**III.     ANALYSIS**

On appeal, Murphy argues that the ALJ's decision was not based on substantial evidence and that the ALJ made an error of law by failing to properly evaluate Murphy's non-exertional limitations in accordance with SSR 85-15 and SSR 00-4p.  Because substantial evidence supports the ALJ's decision and the ALJ properly evaluated Murphy's non-exertional limitations, the court will affirm the decision of the Commissioner.

First, Murphy asserts that the ALJ erred by accepting the opinion of the VE that someone with "poor ability" to deal with work stresses can perform janitorial work or work as a laborer/packer.  Murphy argues that the ALJ allowed the VE to convert a finding of "poor ability" to be reliable into a "good ability" to be reliable because she argues that the VE said that Murphy could choose whether to be reliable.  The Commissioner argues that "poor" means "seriously limited, but not precluded" and the VE did not err by stating that there is a motivational element with reliability.

This court sees no error in how the VE reached her conclusion that Murphy could perform work as a janitor/cleaner and laborer/packer.  The VE based her conclusion both on the hypothetical presented by the ALJ (which was properly based on the medical assessment by Dr. Moore and Dr. Jones) and an assessment of the specific duties of a laborer/packer or janitor/cleaner.  Murphy's "poor ability" to be reliable is not tantamount to a determination that she is unable to be reliable; rather, a "poor ability" as defined by the ALJ means that her ability to be reliable is seriously limited.  The same is true for Murphy's "poor ability" to deal with work stress.  The record reflects that the VE took these limitations into consideration when forming her opinion that Murphy could perform work as a janitor/cleaner and laborer/packer.  The VE's statement that reliability is a "motivational

element" does not convert the finding of "poor ability" into "good ability" as Murphy argues. Since the VE did not err in making this determination, the court, likewise, finds no error in the ALJ's reliance on the VE's testimony. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

Murphy also asserts that the ALJ failed "to recognize the Administration's policy set out in SSR 85-15 and accepted symptoms of [Murphy's] disorder." She then lists the symptoms of mania and depression and argues that accepting the VE's opinion that an individual with a poor ability to deal with work stress can perform the listed jobs is in "direct contravention of the Administration's policy recognizing that the mentally impaired may have difficulty meeting the requirement of even so-called 'low stress' jobs." This SSR provides that an individual *may have difficulty* but does not dictate a finding that an individual *is incapable* of dealing with work stresses. Here, the ALJ based his decision that Murphy could perform the work identified by the VE on a thorough evaluation of the evidence and his decision was not in contravention of the SSA's policies.

Murphy also argues that the VE based her testimony on underlying assumptions and/or definitions that are inconsistent with regulatory policies of the Administration so the ALJ's reliance on the VE's testimony violated SSR 00-4p. As explained above, the court finds that the VE did not err in making her determination that Murphy could perform work as a janitor/cleaner and laborer/packer. Further, the VE testified that her statements were in accordance with the Dictionary of Occupational Titles and the ALJ. Thus, the court's reliance on the VE's testimony is proper.

Second, Murphy argues that the ALJ did not discount the medical expert's opinions but did

not use them in making his determination that Murphy was not disabled. The Commissioner argues that the ALJ set out a thorough evaluation of the matter and properly relied on Dr. Moore's assessment. The court agrees with the Commissioner. The ALJ's opinion states that he gave substantial weight to Dr. Moore's testimony and opinion that Murphy had severe impairments but only mild to moderate limitations in work related functioning. Further, the ALJ's hypothetical was based on Dr. Moore's testimony regarding Murphy's limitations. Accordingly, the court finds no error in the ALJ's determination.

### III. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #9] is **DENIED**;

(2) the Commissioner's motion for summary judgment [DE # 10] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence 4 of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards; and

(4) a judgment will be entered contemporaneously with this Opinion and Order.

This the 18th day of September, 2008.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**